FILED
2018 Jan-10  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROSEMONT FEDERAL OPERATING, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. _____** |
| ) | |
| **BROOKMONT REALTY GROUP, L.L.C.,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW the Plaintiff and files the following as its complaint against the Defendant:

## PARTIES AND JURISDICTION

1.    Plaintiff is Rosemont Federal Operating, LLC ("Rosemont"), a limited liability company organized and existing under the laws of the State of Delaware. All of Rosemont's members are also Delaware business entities. Rosemont is a citizen of Delaware for purposes of diversity jurisdiction.

2.    Defendant is Brookmont Realty Group, L.L.C. ("Brookmont"), a limited liability company organized and existing under the laws of the State of Alabama. Brookmont is a citizen of Alabama for purposes of diversity jurisdiction.

3.    The citizenship of the parties is diverse.

4.      The amount in controversy, without interest and costs, exceeds the sum or value specified in 28 U.S.C. § 1332.

**FACTS**

5.      Rosemont owns a certain office building in Birmingham, Alabama, that is commonly referred to as the "One Federal Place" building (the "Building").

6.      On or about August 28, 2012, Rosemont entered into a certain "Management Agreement" with Brookmont. Per the terms of the Management Agreement, Brookmont would be the property manager for the Building and was charged with the responsibility of management, leasing, operation, maintenance, and servicing of the Building.

7.      Under the terms of the Management Agreement, Brookmont would be paid a monthly management fee based on rental receipts. Brookmont would also be entitled to certain lease commissions under defined circumstances.

8.      In fact, Brookmont has always been paid all management fees and commissions to which it was ever entitled under the terms of the Management Agreement.

9.      The initial term of the Management Agreement was to run for a one-year period, from September, 2012, until September, 2013. Thereafter, the Management Agreement was on a month-to-month basis until termination.

10.     Regarding termination, the Management Agreement provides that
Rosemont may terminate the Management Agreement for various reasons, *inter alia*:

      a. With no notice, if in Rosemont's sole opinion, Rosemont is
dissatisfied with the performance of Brookmont, desires to change
its method of managing or leasing the property, determines
Brookmont has mismanaged the building or has been negligent in
the management, operation, maintenance, leasing or servicing of the
Building or has otherwise defaulted in the performance of its
obligations under the Management Agreement; and

      b. With at least 30 days written notice, without any cause required.

11.     If there is a termination of the Management Agreement, the terms of
the Management Agreement provide that the obligations of the parties shall cease as
of the date specified in the notice of termination.

12.     After termination, the only continuing or ongoing obligations owed by
Rosemont to Brookmont are defined in the Management Agreement as follows:

> In the event of any termination pursuant to Paragraph 9.3 hereunder,
> the Owner shall pay to the Independent Contractor any leasing
> commissions for any new direct leases executed within sixty (60) days
> of the termination date. Accordingly, in these instances, commissions
> will be paid only on those prospective leases which are itemized on a
> list furnished to the Owner within three (3) days after the termination
> of this Agreement and which are executed by tenant as above provided.
> This list may include only those prospects which the Independent
> Contractor has actually negotiated with the purpose of signing a Lease
> at the Property during the term of this agreement and which Owner has

previously approved in writing on a Lease Analysis Form. Owner has no obligation to pay Independent Contractor for any renewals, extensions or expansions signed by tenant(s) after the termination date regardless of the form of lease utilized. In the event of termination of the agreement due to the sale of the Property, Owner shall pay to the Independent Contractor those leasing commissions for any new direct leases fully approved and executed prior to the termination date and the sixty (60) day protection shall not apply.

13.     For many years, two of the major tenants in the Building have been the law firms of Bradley Arant Boult Cummings LLP ("Bradley") and Jones Walker LLP ("Jones Walker").

14.     During the course of Brookmont's management of the Building, a very problematic conflict developed between the lease agreements of Bradley and Jones Walker.

15.     In particular, Jones Walker occupies its leased premises under a certain Lease Agreement dated March 20, 2003, as amended. In relevant part, that Lease Agreement provides certain signage rights to Jones Walker. Not only does the Lease Agreement provide the right to Jones Walker to maintain its name on a "Monument Sign" on the Building, but the Lease Agreement further provides, "No other law firm shall have the right to place its name or logo on the exterior wall of the Building."

16.     Although Rosemont now owns the Building, this Lease Agreement came into existence many years before Rosemont purchased the Building. Rosemont had no actual knowledge of the signage provision in the Lease Agreement until a problem later arose, as discussed below.

17.     On or about July 20, 2015, Bradley entered into a certain Fifth Amendment to Lease Agreement (the "Fifth Amendment"), which amended the Lease Agreement under which Bradley has occupied its leased premises since the year 2000. The Fifth Amendment provides certain signage rights to Bradley. In particular, it provides that Bradley "shall have the exclusive right to have Tenant's trade name illuminated sign installed on up to two (2) exterior faces of the upper levels of the Building."

18.     The Court may glance out its eastern window and take judicial notice of the fact that Bradley has exercised its exclusive signage rights.

19.     Thus, a conflict was created between the signage rights granted to Jones Walker and Bradley in their respective Lease Agreements. Since the year 2003, Jones Walker has had the right to have its name on a Monument Sign on the Building. Since the year 2003, no law firm other than Jones Walker shall have the right to place its name or logo on the exterior of the Building. Yet, in the year 2015, Bradley was granted the right (without Jones Walker's permission) to place two illuminated Bradley signs on the upper exterior of the Building. Bradley then exercised that right. Bradley's signs remain on the Building today.

20.     Jones Walker was not happy about the placement of the Bradley signs on the Building. In fact, Jones Walker took the position that this was a default of the Lease Agreement by Rosemont. Accordingly, Jones Walker asserted that it wished

to terminate its Lease Agreement and vacate the Building, which would leave a tremendous amount of vacant space in the Building for which Rosemont would no longer be receiving any rent.

21.     Per the terms of the Management Agreement between Rosemont and Brookmont, Brookmont was charged with responsibility for the leasing operations of the Building during the year 2015 when Bradley's Fifth Amendment was executed. Brookmont was directly involved with negotiating and executing the Fifth Amendment, including the signage rights.

22.     Brookmont was also very familiar with the Jones Walker lease. For example, Brookmont was charged with responsibility for the leasing operations of the Building during the year 2013, when Jones Walker negotiated and executed a certain Second Amendment to its Lease Agreement. Thus, Brookmont had actual or constructive knowledge of the terms of the Jones Walker lease, including the signage rights, when Brookmont then negotiated Bradley's Fifth Amendment.

23.     At all relevant times, Brookmont either knew or should have known of the conflict that was being created between the Bradley and Jones Walker leases by the execution of the Bradley Fifth Amendment. Brookmont provided no warning or notice to Rosemont of this conflict. Rosemont learned of the conflict much too late, only when Jones Walker had complained of it and the Bradley signs had been installed.

24.    Due to the lease conflict and other management issues, Rosemont became dissatisfied with Brookmont's management of the Building. Accordingly, Rosemont terminated the Management Agreement, in accordance with its terms, on October 4, 2017. A new manager is now managing the Building.

25.    Rosemont has done its best to resolve the problem and mitigate its damages. In particular, Rosemont has negotiated and intends to execute and implement an agreement by which Jones Walker will vacate the Building, and Bradley will move into some of the Jones Walker space and extend and expand Bradley's lease.

26.    Although Rosemont is pleased to have Bradley as a valued and long-term tenant of the Building, Rosemont is not pleased to be losing Jones Walker as a tenant. While Rosemont's damages from losing Jones Walker will be partially mitigated by the Bradley lease extension and expansion, Rosemont still has been significantly damaged in the approximate amount of $2,000,000 by the loss of Jones Walker caused by the lease conflict.

27.    Since the termination of the Management Agreement, Brookmont has caused its attorney to send a demand letter to Rosemont. Brookmont asserts that Brookmont is owed a commission from the Bradley lease expansion/extension.

28.    Rosemont very much disputes that Brookmont is entitled to a commission from the Bradley lease expansion/extension.

29.     The terms of the Management Agreement plainly do not provide for a commission to Brookmont under the circumstances.

30.     Furthermore, Rosemont contends that Brookmont is liable to Rosemont for the loss of Jones Walker and the resulting damages in the approximate amount of $2,000,000.

31.     Due to Brookmont's demand for a commission, and due to Rosemont's denial of that demand, a justiciable controversy exists between the parties.

## COUNT 1

## DECLARATORY JUDGMENT

32.     Rosemont adopts and incorporates by reference the allegations of the preceding paragraphs as if set forth fully herein.

33.     This Court has jurisdiction to declare the parties' rights and responsibilities under the Management Agreement, pursuant to 28 U.S.C. § 2201 and/or the Alabama Declaratory Judgment Act.

34.     Rosemont has terminated Brookmont. This termination was in accordance with the terms of the Management Agreement, which has always provided Rosemont the right to terminate.

35.     After termination, the Management Agreement does not provide for any commissions to be paid to Brookmont except for new direct leases, under certain narrow circumstances. There is no provision for commissions to be paid after

termination for renewals, extensions, or expansions by existing tenants. Section 9.4 of the Management Agreement states, ***"Owner has no obligation to pay Independent Contractor for any renewals, extensions or expansions signed by tenant(s) after the termination date regardless of the form of lease utilized."***

36.     Brookmont is not entitled to any commission or any other payment or compensation related to the Bradley lease expansion/extension.

37.     Wherefore, premises considered, Rosemont prays that this Court will award the following relief:

      a.  Declare that the Management Agreement was properly terminated effective October 4, 2017;

      b.  Declare that Brookmont is owed no commission or any other payment or compensation related to the Bradley lease expansion/extension; and

      c.  Provide such other or further relief as to which Rosemont may be entitled.

## COUNT 2

## BREACH OF CONTRACT

38.     Rosemont adopts and incorporates by reference the allegations of the preceding paragraphs as if set forth fully herein.

39.     In the Management Agreement, Brookmont agreed to the following

obligations owed to Rosemont:

a. "Duly and punctually perform and comply with all of the obligations, terms and conditions required to be performed or complied with by the Owner relating to management, leasing, operation, maintenance, and servicing of the Project, including without limitation, the timely payment of all sums required to be paid thereunder, all to the end that the Owner's interest in the Project and its interests as Landlord under the leases shall be preserved and no default chargeable to the Owner shall occur;"

b. "Use its best efforts to procure tenants for and lease any part of the Project now or hereafter available for lease during the term of this Agreement;"

c. "Indemnifies and agrees to hold harmless the Owner and owner's officers, directors, partners, servants and employees (collectively the "Owner") from any and all liability, costs, obligations, expenses, (including reasonable attorneys' fees), judgments, damages, claims and demands of any kind whatsoever arising out of any claim for any leasing commission, compensation, brokerage fee or other charge made against the Owner by and broker, agent, finder, or any other party in connection with the leasing of space in the Project insofar as such claim, costs, expense, or liability arises from any act or omission of the Independent Contractor, its agents, servants or employees. The obligations of Independent Contractor hereunder shall survive the expiration or termination of this Agreement;" and

d. "Indemnifies and agrees to hold harmless the Owner and Owner's officers, directors, partners, servants and employees (collectively the "Owner") against all costs and expenses (including reasonable attorney's fees) and any claims or damages which may be made against or incurred by the Owner arising out of (a) any failure of the Independent Contractor to perform promptly any of its obligations under this Agreement, except to the extent such failure was caused by the Owner or events beyond the reasonable control of Independent Contractor,…(b) any acts of the Independent Contractor beyond the scope of the Independent Contractor's

authority hereunder not otherwise authorized by the Owner in writing; and (c) any negligent acts or omissions or willful misconduct of Independent Contractor, its agents or employees. The foregoing indemnity shall survive the expiration or termination of this Agreement."

40.     Implied terms, if not explicit, within the contractual obligations of the Management Agreement were that Brookmont would at all times act competently and with due care and would not commit any act or omission that would cause a default or unwanted termination of a tenant lease.

41.     In creating, causing, or otherwise allowing the lease conflict between the Bradley and Jones Walker leases, Brookmont breached its contractual duties to Rosemont.

42.     Rosemont has been damaged by Brookmont's breach of contract.

43.     Wherefore, premises considered, Rosemont prays for judgment in its favor for such amount of compensatory damages as the trier of fact may assess, plus interest, costs, and attorney fees, and for such other or further relief as the Court may allow.

## COUNT 3

## NEGLIGENCE & WANTONNESS

44.     Rosemont adopts and incorporates by reference the allegations of the preceding paragraphs as if set forth fully herein.

45.     At all relevant times, Brookmont owed Rosemont a duty of reasonable care, including that Brookmont would at all times act competently and with due care and would not commit any act or omission that would cause a default or unwanted termination of a tenant lease.

46.     In creating, causing, or otherwise allowing the lease conflict between the Bradley and Jones Walker leases, Brookmont negligently and/or wantonly breached its duty of care to Rosemont.

47.     Rosemont has been damaged by Brookmont's breach.

48.     Wherefore, premises considered, Rosemont prays for judgment in its favor for such amount of compensatory damages as the trier of fact may assess, plus interest, costs, and attorney fees, and for such other or further relief as the Court may allow.

Respectfully submitted,

 /s/ Gregory A. Brockwell
Gregory A. Brockwell (asb-9949-r49b)
*Attorney for Plaintiff*

BROCKWELL SMITH LLC
2100 1st Avenue North, Suite 300
Birmingham, AL 35203
Phone:        (205) 800-8505
Fax:          (205) 928-8110
Email:        greg@brockwellsmith.com